1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie Graham,<br><br>    Plaintiff,<br><br>vs.<br><br>Dysart Unified School District No. 89, et al.,<br><br>    Defendants. | No. CV-10-0507-PHX-MHB<br><br>**ORDER** |

This matter comes before this Court upon consideration of Defendants' Motion to Dismiss (Doc. 6). Plaintiff has filed a Response in Opposition (Doc. 10), and Defendants have filed a Reply (Doc. 12). After hearing oral argument of the parties on August 23, 2010, the Court now issues the following ruling.

## BACKGROUND

Plaintiff is a certified school teacher who first contracted with Defendant Dysart Unified School District (hereinafter "the District") to perform teaching services at El Mirage Elementary School during the 2007-08 school year as a seventh grade school teacher (Doc. 1, ¶¶20, 21.) In or around April, 2008, the Governing Board of the District offered Plaintiff a "continuing teacher contract" for the 2008-09 school year, which she accepted. (Id., ¶24.) The contract was reduced to writing. (Id.) The official duties of certified teachers, including Plaintiff, in the state includes administration of the Arizona Instrument to Measure Standards ("AIMS") standardized test to the students. (Id., ¶¶25, 27.) Plaintiff participated in the administration of the AIMS testing in or around March 2009. (Id., ¶29.) Shortly thereafter,

Plaintiff voiced her concerns with other District teachers over the manner in which the AIMS test was administered to the students. (Id., ¶30.) On or about March 29, 2009, a another District teacher, James Clow, submitted a complaint to Assistant Principal Janet Auch, alleging that on March 19, 2009, Mr. Clow overheard Plaintiff make an inappropriate statement, namely, "shut up you little bastards," to the students. (Id., ¶32.)

On or about March 31, 2009, Plaintiff reported to Defendant Principal Davidson, and denied having used inappropriate language before her students. (Doc. 1, ¶33.) On or about April 1, 2009, Plaintiff sent an email to the Board of Education seeking clarification of the proper AIMS testing procedures and reported the apparent wrongful testing procedure implemented by the El Mirage Elementary School. (Id., ¶34.) On April 2, 2009, Plaintiff confessed to Principal Davidson that she had in fact used inappropriate language in front of her students, and that she had lied previously when she had denied doing so. (Id., ¶36.)

On or about April 3, 2009, Plaintiff was served with a written "notice of Intent to Impose Discipline," issued by Principal Davidson, proposing a suspension of five (5) days without pay. (Doc. 1, ¶37.) On the same day, Plaintiff was hand-delivered a letter, issued by the District Assistant Superintendent Roach indicating that, as the authorized representative of the District Board, he intended to recommend non-renewal of her 2009-10 teaching contract, because Plaintiff's conduct was inconsistent with Governing Board Policies. (Id., ¶39.) On April 8, 2009, the Governing Board conducted a hearing to consider the recommendation for the non-renewal of Plaintiff's contract, as well as recommendations relating to other teachers in the District. (Id., ¶47; Exh. 6.) The Governing Board voted not to renew Plaintiff's contract, based upon the majority vote of Governing Board Members, and Defendants Pritchard, Allen and Tanner. (Id.,¶51.) The Board Minutes of that meeting do not reflect a basis for the decision, and reflect that votes were also taken with regard to the renewal/non-renewal of other teacher contracts. (Id.; Exh. 6.)

On April 9, 2009, an administrative disciplinary hearing was conducted by Principal Davidson; Plaintiff appeared and was represented by counsel. (Doc. 1, ¶¶59, 62-63.) During the hearing, evidence of Plaintiff's conduct on March 19, 2009 was presented. (Id., ¶62.)

Plaintiff alleged, after her April 8 hearing, that some of the evidence was incomplete and unreadable. (Doc. 1, ¶¶62,64; Exh. 8.) On April 14, 2009, Plaintiff was served with a Imposition of Discipline action issued by Principal Davidson, that indicated the basis for the finding of cause to impose discipline. (Id.,¶¶65-68.) Plaintiff filed an appeal of Davidson's decision on April 20, 2009. (Id.,¶77.) District Assistant Superintendent Miller conducted a summary review of the appeal and issued a decision on April 28, 2009 denying relief. (Id.,¶80.) On April 29, 2009, Plaintiff was served with a formal written notice of a 10-day disciplinary suspension. (Id.,¶85.)

Plaintiff then initiated informal grievance procedures through the Memo of Understanding for Certified Teachers ("MOU"), approved by the Governing Board, in cooperation with the DEA, by requesting an informal grievance meeting with Principal Davidson on May 7, 2009. (Doc. 1, ¶¶19, 88.) Davidson summarily denied the request. (Id.,¶¶89, 93.) On June 4, 2009, Plaintiff filed a written request with Davidson for the initiation of formal grievance proceedings. (Id.,¶91.) On June 11, 2009, Davidson notified Plaintiff of the rejection of her request. (Id.,¶93.) On June 26, 2009, Plaintiff submitted a request for Level 2 Mediation with the District Director of Student Services. (Id.,¶95.) On July 10, 2009, District Assistant Superintendent Roach notified Plaintiff's teacher's association representative that it was the official position of the District that Plaintiff had exhausted her avenue of appeal of the discipline imposed. (Id.,¶98.) Plaintiff then filed a Notice of Claim with the District and other state officials on September 29, 2009. (Id.,¶100.)

Plaintiff filed her Verified Complaint in state court on February 16, 2010, and the matter was removed to federal court on the basis of federal question jurisdiction on March 4, 2010. (Doc. 1.) In her Verified Complaint, Plaintiff alleges the following counts:

    Counts I and II: Wrongful Reprisal - Arizona "Whistleblower Act."
    Count III: Wrongful Retaliation - AEPA (A.R.S. §15-1502).
    Count IV: Wrongful Termination - AEPA.
    Count V: Breach of Contract.
    Count VI: Breach of Warranty of Good Faith and Fair Dealings.
    Count VII: Breach of Contract - MOU.

Count VIII: Breach of Warranty of Good Faith & Fair Dealing - MOU.
Count IX: Deprivation of Due Process - Disciplinary Proceedings.
Count X: Deprivation of Due Process-Wrongful Termination.
Count XI: Intentional Infliction of Emotional Distress.
Count XII: Negligent Supervision.
Count XIII: Defamation.
Count XIV: Tortuous Interference with Contractual Relationship.
Count XV: Aiding and Abetting Tortuous Conduct.

Plaintiff names as Defendants the District, the District Governing Board, the Governing Board members in their individual capacity, Superintendent Gail Pletnick, Assistant Superintendent William Roach, Assistant Superintendent Cynthia Miller, and El Mirage Elementary School Principal Joel Davidson. Plaintiff prays for various forms of relief, including general and special damages, punitive damages, and attorney fees. (Doc. 1, at 46-47.)

**ANALYSIS**

Defendants move to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6). The Federal Rules of Civil Procedure embrace a notice-pleading standard. All that is required to survive a Rule 12(b)(6) motion is a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). In pleading the grounds of the claim, plaintiff need not provide "detailed factual allegations;" however, the plaintiff must plead enough facts "to raise a right to relief above the speculative level." Id. Factual allegations that are consistent with lawful conduct are insufficient to state a claim. Id. at 557. Such allegations are neutral and do not suggest "plausible liability" on the claim. See id., n. 5.

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will

- 4 -

1 not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." Iqbal, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Plausibility does not equal "probability," but plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id. (citation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must construe the facts alleged in the complaint in the light most favorable to Plaintiff and the Court must accept all well-pleaded factual allegations as true. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). The court may also consider documents that are referred to in the complaint, when there is no question as to the authenticity of the documents. Id.

## ARIZONA NOTICE OF CLAIMS STATUTE

Plaintiff's state and common law claims are subject to Arizona's Notice of Claim Statute, which provides as follows:

> Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. §12-821.01(A).

> [A] cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage.

A.R.S. §12-821.01(B).

Arizona appellate courts have repeatedly recognized that "[c]ompliance with the notice provisions of A.R.S. §12-821.01(A) is a mandatory and essential prerequisite" to a damages action against an Arizona public entity. Salerno v. Espinoza, 210 Ariz. 586, 588 (App. 2005); "The purpose of the [notice of claims] statute is to allow the entity and

- 5 -

employee the opportunity to investigate and assess their liability, to permit the possibility of settlement prior to litigation and to assist the public entity in financial planning and budgeting." Harris v. Cochise Health Sys., 215 Ariz. 344, 351 (App. 2007) (citation omitted); see, Falcon ex rel. Sandoval v. Maricopa County, 213 Ariz. 525, 527 (2006). Furthermore, "[a]ctual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. 12-821.01(A)." Dillon v. Arizona, 2008 WL 4628475, 4 (D.Ariz. 2008) (citing Deer Valley Unified School District No. 97 v. Houser, 214 Ariz. 293 (2007), and noting at FN4 that "[a] number of state and federal courts in Arizona have recognized this principle as the import of Deer Valley and applied it in various situations.").

"When a person asserts claims against a public entity and public employee, the person 'must give notice of the claim to both the employee individually and to his employer.'" Harris, at 351 (citation omitted). A notice of claim must be filed with a person authorized by the Arizona Rules of Civil Procedure to accept service. A.R.S. §12-821.01. Pursuant to Fed.R.Civ.P. 4.1(d), service upon an individual means either personal service, service at the individual's dwelling house or usual place of abode through a person of suitable age and discretion then residing therein, or service through an agent authorized by appointment or by law to receive service. It is undisputed that Plaintiff did not effect the statutorily required service upon individual Defendants Pritchard, Schroader, Allen, Lipscomb, Tanner, Pletnick, Roach, Miller and Davidson. Thus, the claims against them must be dismissed. Accord, Nored v. City of Tempe, 614 F.Supp.2d 991 (D.Ariz. 2008); Reeves v. City of Show Low, 2009 WL 1125414 *3 (D.Ariz. 2009).

Plaintiff argues that he affected proper service upon the District and the Governing Board[1] by delivery of her Notice of Claim to the following address:

    Dysart Unified School District

---

[1]Under Arizona law, a "school district" and a "governing board" are synonymous for purposes of government action and liability; therefore, the District and the District Governing Board will be denoted jointly as "the District."

| | |
|---|---|
| 1 | Governing Board |
| | 15802 N. Parkview Place |
| 2 | Surprise, Arizona 85374 |

3 Additionally, Plaintiff delivered his Notice of Claim to the attorney for the District, now
4 attorney for all defendants in this action. Previous to that delivery, Plaintiff had been
5 instructed by the District's attorney to direct "any further communication . . . [relating to] this
6 matter . . . to [his] attention. (Doc. 1, Exh. 5.)

7 According to the Arizona Rules of Civil Procedure, service of process upon a school
8 district is accomplished by service upon the Chief Executive Officer, as interpreted by
9 Arizona Courts to be the district's Governing Board. Ariz.R.Civ.P. 4.1(I); Batty v. Glendale
10 Union High Sch. Dist. No. 205, 221 Ariz. 592 (Ariz. App. 2009). See also, A.R.S. §15-326
11 (school district and governing board are synonymous for purposes of government action and
12 liability). Defendants argue that to properly serve a notice of claim on a public entity, each
13 member of the Governing Board must be served. Defendants rely on Batty as authority for
14 this proposition. The court in Batty determined that service upon the Superintendent of the
15 school district was insufficient service on the district, as the Superintendent had not been
16 properly designated to assume the authority to accept service for the district. Batty, 221 Ariz.
17 at 596. The Batty court relied heavily upon the holding of the Arizona Supreme Court in
18 Falcon v. Maricopa County, 213 Ariz. 525 (2006). The court in that case held that service
19 upon one member of the Maricopa County board of supervisors was insufficient service of
20 a notice of claim on the County. Falcon, 213 Ariz. at 530. Defendants argue that the holdings
21 of Batty and Falcon compel the conclusion that Plaintiff's service of her notice of claim upon
22 the District was insufficient.

23 The instant case is distinguishable in two respects. Plaintiff served her notice of claim
24 on the "only known and legal address" of the Governing Board, addressing it to the Dysart
25 Unified School District, Governing Board. The District does not dispute that the notice of
26 claim was received as addressed, or claim that there was noone at that office designated or
27 authorized to receive service for the District. Thus, this was not service upon an individual
28 not authorized to accept service (Batty), nor was it service upon an individual board member

1 that would not necessarily convey the intent of the claimant to notice the entire board
2 (Falcon). Furthermore, the attorney for the District advised Plaintiff's counsel in a letter
3 dated April 8, 2009, that his "law firm represents Dysart Unified School District . . .[and]
4 [a]ny further communication from your office on this matter should be directed to my
5 attention." (Doc. 1-2, at 74.) Plaintiff thus served her notice of claim upon the attorney for
6 the District as well. For all of the aforementioned reasons, the Court finds that Plaintiff
7 served a valid notice of claim on the District.

## PLAINTIFF'S SECTION 1983 ACTION

To state a prima facie case under 42 U.S.C. §1983, Plaintiff must show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) Section 1983 provides a cause of action for the violation under color of law of property or liberty interests protected by the Fourteenth Amendment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). Plaintiff alleges a constitutional deprivation of her due process rights in the context of imposing a disciplinary suspension and not renewing her teaching contract.

In order to make out a claim that she was denied due process in the disciplinary suspension, Plaintiff would have to allege that she was denied adequate procedural and substantive due process during her disciplinary proceedings. Defendants argue that Plaintiff was afforded due process, in that she was given notice, consistent with the requirements of A.R.S.§ 15-341(21), of the District's intent to impose discipline, notice of the basis for the intended discipline, a hearing, and that the discipline imposed was reasonable, appropriate and warranted under the circumstances. Plaintiff does not dispute this argument in her Response.

Plaintiff argues that Defendants did not follow the District's own policies and procedures during the disciplinary process. The failure of a school district to follow its own policies does not alone rise to the level of a due process violation. Jacobs v. Clark County Sch. Dist., 526 F.3d 419, 441 (9th Cir. 2008); Smith ex. rel. Smith v. Seligman Unified Sch.

Dist., 664 F.Supp.2d 1070, 1076 (D.Ariz. 2009). Plaintiff fails to make a claim of a due process deprivation in the imposition of the discipline imposed. Her claim in that regard fails as a matter of law.

Plaintiff also does not dispute that "Arizona law does not provide" a "protected property interest in continued employment." Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. Of Governors, 184 Ariz. 419 (Ariz. App. 1995). Thus, a non-continuing teacher does not have a right to a hearing on a district's decision not to renew her contract. Plaintiff claims, however, that she was entitled to, yet not provided, a "name clearing" hearing, as she was terminated for "unprofessional conduct."

Plaintiff does not allege a violation of her liberty interest in her Complaint. As such, she is foreclosed from raising it now. Overall, she fails to respond to the Defendants' arguments as they relate to her alleged liberty interest. The Court will however, alternatively address the issue, considering that Plaintiff may request, and may be granted leave to amend her Complaint. To establish a liberty interest claim, Plaintiff must show that in the context of discharging her, the Defendants made a false stigmatizing public statement concerning reasons for termination which forecloses further employment opportunities or results in significant damage to the employee's standing in the community. Paul v. Davis, 424 U.S. 693, 710 (1976); Portman v. County of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1993). Harm to reputation alone is not enough. Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1179 (9th Cir. 1998). Charges that relate to general incompetence do not rise to the level of an infringement of a liberty interest. Portman, 995 F.2d at 907 (the charges focused on Portman's "alleged lack of competence," and thus "did not infringe upon [his] liberty interest.") Furthermore, the charges must be published. Id. (citing Bishop v. Wood, 426 U.S. 341 (1976)).

Additionally, there is no requirement for a pre-termination hearing when a government entity votes not to renew an employee's contract if the employee's only interest is in clearing the stigma that might attach to the non-renewal. See McLeod v. Chilton, 132 Ariz. 9, 19 (Ariz. App. 1981). In the instant case, Plaintiff was notified in a letter hand-

delivered to her and addressed to her personally that the District would recommend non-renewal of her teaching contract. There is no indication that this letter was published to any person not a party to the proceeding. Plaintiff was given notice of the meeting of the Governing Board where they met and considered the matter. The board voted to not to renew Plaintiff's contract, and the minutes of the board meeting do not reflect any basis for the board's decision. Thus, there is no indication that there was any publicized impugning of Plaintiff's "good name" in the decision that was made to not renew her contract.

In addition, Plaintiff had the opportunity during the disciplinary hearings to clear her name; the result of which was the discipline, and the subject of which influenced the decision of the district not to renew her teaching contract. See Mustafa, 157 F.3d at 1179 (employee had opportunity by virtue of his arbitration hearings to clear his name). Plaintiff's objection, after the hearing, to the legibility of a student statement, and the failure to provide her with a copy of the memorialization of a teacher's statement, does not change the fact that she had notice of the allegations and the opportunity to contest them. She also had the opportunity to present evidence that her discipline was in retaliation for her complaints about the AIMS testing.

Furthermore, Plaintiff does not challenge the fact that she spoke inappropriately to her students, or that she lied to her Principal upon being confronted. The taint associated with the non-renewal of Plaintiff's teaching contract is so interwoven with the taint associated with her discipline that a separate name-clearing hearing in the non-renewal proceeding would not provide Plaintiff with any additional, measurable due process. For all of the above reasons, Plaintiff fails to state a §1983 claim against Defendants.

### A) School District Liability.

Defendants argue, alternatively, that there is no basis for school district liability under Section 1983 because a local government entity "may not be sued under 1983 for an injury inflicted solely by its employees or agents," unless the alleged conduct was committed pursuant to either an official policy or long-standing custom, or that the deprivation was the

product of deliberate indifference to the need for training.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690-95 (1978); City of Canton v. Harris, 489 U.S. 378, 387-88 (1978); accord, Smith ex. rel. Smith, 664 F.Supp.2d at 1077.  The District may not be held vicariously liable for violations of its employees under a theory of *respondeat superior*.  Monell, 436 U.S. at 691.  As the Supreme Court has summarized, a political subdivision "cannot be held liable unless a … policy or custom caused the constitutional injury."  Leatherman v. Tarrant County Narcotics Intell. & Coordination Unit, 507 U.S. 163, 166 (1993); see also McGrath v. Scott, 250 F.Supp.2d 1218, 1222-23 (D. Ariz. 2003) ("municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs['] federally protected rights").

Plaintiff alleges that the actions taken by the District actually violated District policy, and that she was treated differently from others who were accused of similar misconduct.  Thus, because she is not claiming that the actual policies caused the violation of her protected rights, the District can not be liable under Section 1983 as alleged.  Furthermore, Plaintiff fails to respond to the District's argument, and as such, the Court may consider Plaintiff to have consented to the granting of the motion to dismiss on this claim.  See LRCiv. 7.2(I).

**B)** **Qualified Immunity of Individual Defendants**

Defendants argue that the individual Defendants are entitled to qualified immunity on the Section 1983 claim as a matter of law.  The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law. Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir.1994). Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted). A government employee can establish qualified immunity by demonstrating (1) that the law governing the employee's conduct was clearly established at the time of the challenged actions, or (2) that under the clearly established law, the employee could reasonably have believed that the alleged conduct was lawful. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir.1994) (citations omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (observing that government officials "are

product of deliberate indifference to the need for training.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690-95 (1978); City of Canton v. Harris, 489 U.S. 378, 387-88 (1978); accord, Smith ex. rel. Smith, 664 F.Supp.2d at 1077.  The District may not be held vicariously liable for violations of its employees under a theory of *respondeat superior*.  Monell, 436 U.S. at 691.  As the Supreme Court has summarized, a political subdivision "cannot be held liable unless a … policy or custom caused the constitutional injury."  Leatherman v. Tarrant County Narcotics Intell. & Coordination Unit, 507 U.S. 163, 166 (1993); see also McGrath v. Scott, 250 F.Supp.2d 1218, 1222-23 (D. Ariz. 2003) ("municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs['] federally protected rights").

Plaintiff alleges that the actions taken by the District actually violated District policy, and that she was treated differently from others who were accused of similar misconduct.  Thus, because she is not claiming that the actual policies caused the violation of her protected rights, the District can not be liable under Section 1983 as alleged.  Furthermore, Plaintiff fails to respond to the District's argument, and as such, the Court may consider Plaintiff to have consented to the granting of the motion to dismiss on this claim.  See LRCiv. 7.2(I).

**B)** **Qualified Immunity of Individual Defendants**

Defendants argue that the individual Defendants are entitled to qualified immunity on the Section 1983 claim as a matter of law.  The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law. Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir.1994). Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted). A government employee can establish qualified immunity by demonstrating (1) that the law governing the employee's conduct was clearly established at the time of the challenged actions, or (2) that under the clearly established law, the employee could reasonably have believed that the alleged conduct was lawful. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir.1994) (citations omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (observing that government officials "are

product of deliberate indifference to the need for training.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690-95 (1978); City of Canton v. Harris, 489 U.S. 378, 387-88 (1978); accord, Smith ex. rel. Smith, 664 F.Supp.2d at 1077.  The District may not be held vicariously liable for violations of its employees under a theory of *respondeat superior*.  Monell, 436 U.S. at 691.  As the Supreme Court has summarized, a political subdivision "cannot be held liable unless a … policy or custom caused the constitutional injury."  Leatherman v. Tarrant County Narcotics Intell. & Coordination Unit, 507 U.S. 163, 166 (1993); see also McGrath v. Scott, 250 F.Supp.2d 1218, 1222-23 (D. Ariz. 2003) ("municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs['] federally protected rights").

Plaintiff alleges that the actions taken by the District actually violated District policy, and that she was treated differently from others who were accused of similar misconduct.  Thus, because she is not claiming that the actual policies caused the violation of her protected rights, the District can not be liable under Section 1983 as alleged.  Furthermore, Plaintiff fails to respond to the District's argument, and as such, the Court may consider Plaintiff to have consented to the granting of the motion to dismiss on this claim.  See LRCiv. 7.2(I).

**B)** **Qualified Immunity of Individual Defendants**

Defendants argue that the individual Defendants are entitled to qualified immunity on the Section 1983 claim as a matter of law.  The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law. Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir.1994). Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted). A government employee can establish qualified immunity by demonstrating (1) that the law governing the employee's conduct was clearly established at the time of the challenged actions, or (2) that under the clearly established law, the employee could reasonably have believed that the alleged conduct was lawful. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir.1994) (citations omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (observing that government officials "are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

The question of immunity generally is not one for the jury. Qualified immunity is an immunity from suit rather than a mere defense to liability. Siegert v. Gilley, 500 U.S. 226, 233 (1991). "Immunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228 (1991) (citation omitted). However, if a genuine issue of material fact exists regarding the circumstances under which the employee acted, then the court should make the determination after the facts have been developed at trial. Act Up!*Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993).

The initial inquiry that the court must make to determine whether an official is entitled to qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official]'s conduct violated a constitutional right?" Siegert, 500 U.S. at 232. The court "should ask whether the [defendants] acted reasonably under settled law in the circumstances, . . ." Id., at 228. Plaintiff's claim that the actions of the Defendants were in retaliation for her reporting improper AIMS testing procedure to the "Board of Education" and "other teachers/administrators(s)" is speculative. Plaintiff is required to plead enough facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 The actions of the Defendants, as alleged, are equally consistent with initiating and concluding a valid disciplinary process. Plaintiff does not set forth a plausible claim that the individual Defendants in this case violated her constitutional rights. As such, the individual Defendants are entitled to qualified immunity from the §1983 claims.

### REMAINING STATE LAW CLAIMS

This Court has discretion to decline to accept jurisdiction of state-law claims, and exercises that discretion in this case as to the remaining claims. The sole jurisdictional basis for the removal of this action is federal question jurisdiction pursuant to 28 U.S.C.§ 1331. Plaintiff's pendant state law claims are subject to dismissal at the discretion of this Court.

After federal claims are dismissed, the general rule is to dismiss state law claims if the federal claims are dismissed before trial. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1996); Fichman v. Media Center, 512 F.3d 1157, 1162-63 (9th Cir. 2008). Pendant jurisdiction over state law claims is based on considerations of judicial economy, convenience and fairness to litigants, so that jurisdiction may be exercised over a state law claim, if there is a relationship between it and the federal question being resolved by the court. Gibbs, 383 U.S. at 725-26. Consequently, there is no reason to exercise pendant jurisdiction over a case where the federal claims are dismissed at the outset of an action. Ordinarily, dismissal is "without prejudice" because it is not an adjudication of the merits of the claim. Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 182 (3rd Cir. 1999).

**CONCLUSION**

The Court will dismiss Plaintiff's state law claims against the individual Defendants on the basis of the failure of Plaintiff to serve them individually with a notice of claim. The federal claims against all Defendants will be dismissed based upon Plaintiff's failure to allege a due process violation; additionally, the District is not liable under the theory of *respondeat superior*, and the individual Defendants are entitled to qualified immunity. The remaining state law claims pending against the District are dismissed without prejudice.

**IT IS THEREFORE ORDERED** dismissing Counts IX and X, and Defendants Christine A.k. Pritchard, Bonnie Schroader, April Allen, William Lipscomb, Jennifer Tanner, Gail Pletnick, Ed.d., Wiliam Roach, Cynthia Miller, and Joel Davidson from the Complaint with prejudice, and dismissing Defendants Dysart Unified School District 89, and the Governing Board of the Dysart Unified School District No. 89, from the Complaint without prejudice.

DATED this 26th day of August, 2010.

Michelle H. Burns
United States Magistrate Judge